(No. 92-CC-0589-)

STUPP BROTHERS BRIDGE & IRON CO., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order on motion to dismiss filed May 26, 1998.*
*Order filed July 23, 1998.*
*Order filed July 24, 1998.*

CROWDER & SCOGGINS, LTD. (ALAN G. PIRTLE, of counsel), for Claimant.

JIM RYAN, Attorney General (KELLI L. GIDCUMB, Assistant Attorney General, of counsel), for Respondent.

## ORDER ON MOTION TO DISMISS

EPSTEIN, J.

This construction contract claim, which seeks recovery of $95,000 withheld by the Department of Transportation ("IDOT") as liquidated delay damages on a 1989 steel

fabrication contract—for an F.A.I. Route 90/94 (Dan Ryan Expressway) reconstruction project—is before the Court on the Respondent's motion pursuant to section 2—619q of the Code of Civil Procedure (735 ILCS 5/2—619) to dismiss on exhaustion grounds. Respondent's motion is supported by evidentiary material, primarily correspondence. Claimant's opposition is supported by affidavit. We take the motion on the papers filed.

## Respondent's Exhaustion Motion

Respondent asserts that the Claimant failed to exhaust a potential alternative recovery from a third party—a mandatory condition of recovery from the State, under section 25 of the Court of Claims Act (705 ILCS 505/25) and our Rule 60 (74 Ill. Admin. Code 790.60)—which bars this claim. Respondent asserts, and Claimant concedes, that Claimant has not filed suit against the (former) U.S. Steel Corporation ("USS"), now USX, which was Claimant's supplier of the steel for its fabrication work for IDOT in this case. Respondent cites correspondence between Claimant and USS in which the Claimant demanded recompense from USS for its delivery delays and blamed USS delays for causing, or contributing to, its tardiness in delivering its fabricated work product to IDOT, which generated the contractual delay damages (at $2,500 per day) that were imposed by IDOT.

## Claimant's Arguments in Opposition

In response, the Claimant (a) denies that it had any contract or other legal basis for suing USS for any "delay" in its delivery of the raw steel, (b) denies that USS was contractually obligated to a delivery deadline, (c) contends that Respondent has misconstrued and taken out of context its correspondence with USS, and (d) blames IDOT delays in its contract bidding-and-awarding process as the cause of the delay in obtaining the steel from USS

and ultimately as the cause, or a cause, of Claimant's late performance. Supported by the affidavit of its vice president, R. Philip Stupp (exhibit 1 to Claimant's "Memorandum of Law in Opposition to Motion to Dismiss," hereinafter "Stupp aff."), Claimant asserts, and Respondent does not dispute, that there was no written contract between USS and the Claimant, and that the oral order or agreement with USS for the manufacture of the steel did not include a commitment to a firm delivery deadline.

Claimant also points out, again supported by affidavit, that the practice in the steel industry generally, as well as for USS, is to manufacture steel episodically on regularly- and pre-scheduled steel "rolling" dates—called "rolling schedules"—that each mill has established and that are not subject to alteration or supplementation to accommodate special orders from individual customers. (Stupp aff., pars. 15-18.) Claimant's position, essentially, is that it missed the critical USS December, 1989, "rolling schedule" due to IDOT's timing of the contract award, without "fault" of its own, and that USS bears no liability for delays because its production and delivery of the steel were within industry standards in light of the order date and the pre-established rolling schedules.

Claimant also emphasizes, somewhat inconsistently, that it ordered the steel from USS *before* it was contractually bound to do so—i.e., before the contract was signed or even awarded to Claimant, and even before Claimant received a "notice of intent" from IDOT to award the contract to it—and that IDOT's notice was not issued until after the USS order deadline for the December, 1989, "rolling schedule" had already passed. Stupp aff., pars. 11, 13, 14, 17; exhibit G.

## Analysis

We do not address the incipient dispute as to the ultimate cause(s) of the Claimant's delayed performance in

this case, as between Claimant's fault (IDOT'S position), USS's fault (IDOT's view of Claimant's prior position) and IDOT's fault (Claimant's position), which is neither evidenced on the current record nor before us. However, on the present undisputed record, it is clear that no factual or legal basis has been advanced by Respondent to support a viable claim of liability against USS for delay in its supply of steel to Claimant. Review of the Claimant-USS correspondence advanced by Respondent fails to show any cognizable legal basis for USS delay liability and, remarkably, fails to show that the Claimant asserted otherwise.

It is not enough to point to an involved third-party to invoke this Court's exhaustion requirement as a bar to recovery. It is inadequate merely to say, as Respondent does here, that someone else said or admitted that a third-party may have some liability. A showing of potential liability must be made. The alternative-source exhaustion requirement is not a doctrinal procedural obstacle. The requirement to exhaust alternative sources of recovery before recovering from the State serves the purpose of making the State the payor of last resort and the payor of the least possible portion of any shared culpability for damages. As Claimant observes, this Court has applied this statutory exhaustion principle strictly, but not unreasonably.

Our precedents do not reflect a mechanical application of the rule divorced from its underlying practical purpose. This Court has declined to require Claimants to bring "exhausting" actions against third parties where such action is legally baseless or barred (*see Blumstein v. State* (1995), 47 Ill. Ct. Cl. 186, 191) (potential third-party source of recovery immune); or where the Claimant could not timely know of the third-party's potential liability (*see McKee v. State* (1978), 33 Ill. Ct. Cl. 58); and in a number of cases we have refused to dismiss claims where

the putative third-party recovery source was shown to be unpursuable or judgment proof. This Court has consistently applied the rule to require the Respondent to carry the initial burden of showing that there is a viable cause of action under established or provable facts against the putative third-party source. (*See, e.g., Tunk v. State* (1988), 40 Ill. Ct. Cl. 1.) In appropriate circumstances, where distinct damage elements are involved, this Court has applied the exhaustion rule to bar or limit a particular element of recovery, rather than to bar all recovery on a multi-element claim. *Guarantee Electrical Co. v. State* (1991), 43 Ill. Ct. Cl. 35.

### Conclusion and Order

The Respondent's motion fails to establish a reasonably likely basis of recovery from USS, or any legal basis for this Claimant to sue USS. Respondent has not carried the burden of showing the existence of a likely source of alternative recovery. We will not require litigants to file baseless or frivolous suits as a precondition of litigation in this Court. The motion to dismiss will be denied without prejudice to raise this issue as an affirmative defense or to renew it by motion in the event that facts later adduced give rise to a genuine issue of third party liability.

It is therefore ordered: The Respondent's motion to dismiss for failure to exhaust alternative sources of recovery is denied without prejudice.

### ORDER

SOMMER, C.J.

This cause comes before the Court on the parties' joint stipulation for settlement which states: "This claim arises from a claim of liquidated damages resulting from a contract entered into between the parties in the above entitled cause of action."

The parties have investigated this claim, and have knowledge of the facts and law applicable to the claim, and are desirous of settling this claim in the interest of peace and economy.

Both parties agree that an award of eighty-five thousand dollars and 00/100 ($85,000) is both fair and reasonable.

Claimant agrees to accept, and Respondent agrees to pay Claimant eighty-five thousand dollars and 00/100 ($85,000) in full and final satisfaction of this claim and any other claims against Respondent arising from the events which gave rise to this claim.

The parties hereby agree to waive hearing, the taking of evidence, and the submission of briefs.

This Court is not bound by such an agreement but it is also not desirous of creating or prolonging a controversy between parties who wish to settle and end their dispute. Where, as in the instant claim, the agreement appears to have been entered into with full knowledge of the facts and law and is for a just and reasonable amount, we have no reason to question or deny the suggested award.

It is hereby ordered that the Claimant be awarded eighty-five thousand dollars and 00/100 ($85,000), in full and final satisfaction of this claim.

## ORDER

SOMMER, C.J.

This cause coming on for hearing on Respondent's motion to substitute general release and joint stipulation for settlement and the Court being fully advised in the premises:

It is hereby ordered that Respondent's motion is hereby granted allowing Respondent to substitute the

originals for the fax copies of the general release and joint stipulation for settlement.